UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x

DOREEN WASHINGTON,

          Plaintiff,

  -against-

GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C.,

          Defendants.

———————————————————————— x

**CV.07** Civil Action No. **4096**

**GLASSER, J**

**COMPLAINT AND JURY DEMAND,**

**J. ORENSTEIN, M.J.**

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E

UCT 0 1 20[

BROOKLYN OFFICE

## PRELIMINARY STATEMENT ★

1. This is an action for actual and statutory damages brought by an individual consumer for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, or unfair practices. Plaintiff's only source of income is Supplemental Security Income and public assistance, both of which are exempt from debt collection. 42 U.S.C. § 1383(d)(1), N.Y. Debt. & Creditor Law § 282. Defendant, on behalf of a landlord creditor, has restrained plaintiff's bank account three times, even though each time it has contained only exempt moneys. Moreover, defendant had notice via a court order dated December 6, 2006 that plaintiff's only source of income was exempt Supplemental Security Income. Despite this knowledge, defendant restrained plaintiff's bank account a third time on or about May 4, 2007.

Page 1 of 14

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue in this district is proper under 28 U.S.C. § 1391(b) because Defendant transacts business here, and some of the conduct complained of occurred here.

## PARTIES

4. Plaintiff DOREEN WASHINGTON is 47 years old and resides in a homeless shelter at 603 Dean Street, Brooklyn, New York, 11238.

5. Defendant Gutman, Mintz, Baker & Sonnenfeldt, P.C. (Hereinafter "Gutman & MINTZ") is a law firm located at 813 Jericho Turnpike, New Hyde Park, NY 11040.

6. Defendant GUTMAN & MINTZ is a law firm engaged in the business of collecting debts, including rental arrears owed to landlords, by filing civil collection lawsuits on behalf of its clients.

7. On its web site Defendant GUTMAN & MINTZ describes itself as a firm that "specializes in collection matters, including the recovery of funds following the conclusion of the landlord-tenant relationship."

8. Moreover, if one calls GUTMAN & MINTZ by telephone, one receives a recorded message that one should dial extension 411 if the call concerns the restraint of a bank account.

9. GUTMAN & MINTZ is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

10. Defendant GUTMAN & MINTZ transacts business in this district.

## STATUTORY AND REGULATORY FRAMEWORK

## SOCIAL SECURITY PAYMENTS

11.     The Social Security Administration ("SSA") administers the Supplemental Security Income ("SSI") program which pays monthly cash benefits to persons who are disabled <u>and</u> live in poverty. 42 U.S.C. § 1381 et seq.  Poverty is defined as having less than $2000 in assets and little or no other income.  20 C.F.R.  §§ 416.1110, 416.1205.

12.     Congress protects SSI payments from debt collection.  More specifically, 42 U.S.C. § 407(a) and § 1383(d)(1) provide that "none of the moneys paid or payable . . . under this title shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ."

## NEW YORK STATE POST JUDGMENT COLLECTION PROCEDURES

13.     Article 52 of the N.Y. Civil Practices Law and Rules ("N.Y. CPLR") sets out the procedures creditors must use in attempting to collect money judgments.

14.     An attorney for the judgment creditor can discover assets of a judgment debtor by serving an information subpoena upon a bank by personal service, regular mail or electronic format.  N.Y. CPLR § 5224.

15.     Failure of the bank to respond to questions in a subpoena is punishable by contempt.  N.Y. CPLR § 5224.

16.     Once a judgment debtor's assets are located, the judgment creditor's attorney can issue a restraining notice pursuant to N.Y. CPLR § 5222 that restrains or "freezes" twice the amount of the judgment in the bank account of the debtor.

17.     An information subpoena with restraining notice can be served simultaneously upon a bank.  When this is done, the bank must restrain the debtor's bank account and then

answer the information subpoena.

18.    The notice of restraint forbids the bank (the "garnishee") from selling, assigning, transferring, or interfering with the restrained property of the judgment debtor, except upon direction of a sheriff or marshal or the Court. N.Y. CPLR § 5222(b).  During the time a restraint is in effect, no checks may be cashed or cleared and no funds can be withdrawn from the frozen moneys of the account.  The account, however, remains open for deposits.

19.    A bank's failure to freeze or otherwise prevent transfer of the funds contained in a bank account after receipt of a restraining notice is punishable by contempt of court. N.Y. CPLR §§ 5222(a) and 5251.

20.    The freeze stays in effect until a) the debtor agrees to pay the creditor, or b) the creditor engages a marshal or sheriff to seize the debtor's funds, or c) the debtor obtains a court order directing the bank to lift the restraint. N.Y. CPLR § 5222(b).

21.    Because a debtor may not know that his or her income may be exempt from debt collection or how to claim an exemption, the creditor must mail or personally delivered a "notice to judgment debtor" with a copy of the restraining notice to the judgment debtor within four days of service of the restraining notice on the garnishee. N.Y. CPLR § 5222(d).

22.    The "notice to judgment debtor" advises the debtor that his or her funds have been restrained and that certain property, such as SSI and welfare, are exempt from collection efforts. N.Y. CPLR §§ 5222(d) and 5222(e).

23.    The "notice to judgment debtor" also explains that if the debtor thinks his or her account contains any money that is exempt, the debtor may contact the attorney who issued the restraining notice, or Legal Aid.  N.Y. CPLR § 5222(e).  The notice further cites N.Y. CPLR §§

5239 and 5240 as the statutory "procedure for determining a claim to an exemption."

## FACTS CONCERNING PLAINTIFF WASHINGTON

24.   Plaintiff DOREEN WASHINGTON is a 47 year old Supplemental Security Income recipient who lives with her two minor children (ages 15 and nine) in a homeless shelter.

25.   Ms. Washington used to work as an aide to mentally retarded children, a home health aide, and a homemaker for her children.

26.   In December 2003, Ms. Washington had a stroke that weakened her entire left side. She now limps, needs a a four-pronged cane for walking, and has difficulty grasping and carrying objects with her left hand. The stroke was so severe that Ms. Washington qualified for SSI disability payments in 2004.

27.   Ms. Washington's only income is $646.00 each month in Supplemental Security Income Disability ("SSI") payments. Ms. Washington also receives a welfare grant of $372 a month for her two children (with whom she lives) and her 19 year old daughter and 6 month old granddaughter (who live independently.) Ms. Washington also receives $226 monthly in Food Stamps which she uses to feed her three children and one grandchild.

28.   In 1999, Ms. Washington was living at 355 Bristol Street, #c  Brooklyn, New York where she paid a modest rent due to a federal rent subsidy program.  However, she failed to re-certify for that program and her eligibility for the subsidy lapsed.  Consequently, she became liable for the full amount of the rent, or $1220 a month.  Since her only income at the time was a public assistance grant of about $600 a month, she was unable to pay the rent.

29.   Consequently, Ms. Washington was evicted from the apartment by a New York City Marshall in January 2000.

30.     More than five years later, Defendant law firm GUTMAN & MINTZ, as attorney

for the landlord, Dubor Associates, brought suit on the rental arrears in Civil Court in Kings

County, seeking $4969.41 in past rent plus interest and fees.  Judgment by default was entered on

June 2, 2005 in favor of the landlord, Dubor Associates, in the amount of $7561.67.

31.     Thereafter defendant GUTMAN & MINTZ sought to enforce the judgment on

behalf of Dubor Associates.  In June 2005, it served a restraining notice upon North Fork Bank.

Upon information and belief, at the time the restraint was served, Ms. Washington's North Fork

account contained only direct deposit SSI payments and direct deposit child support payments.

Nevertheless, North Fork restrained the account.

32.     Ms. Washington never received a 5222(e) notice from defendant GUTMAN &

MINTZ that advises a debtor that certain money is exempt from debt collection, including SSI

and child support, and the procedures for making an exemption claim.  Such notice is required to

satisfy due process.

33.     Ms. Washington learned of the restraint when she called the bank to see if her

children's direct deposit child support check had arrived.  The bank advised her that she needed

to contact defendant GUTMAN & MINTZ  to resolve the problem.

34.     In late June 2005, Ms. Washington contacted defendant GUTMAN & MINTZ and

spoke with a man named Angel.  Angel agreed that GUTMAN & MINTZ could not take the

child support, but stated Ms. Washington had to pay her own money to repay the debt.  Ms.

Washington said she could not afford that as she was on SSI.  Angel said that she needed to make

at least a monthly payment, and suggested $100 a month.  Only then would GUTMAN &

MINTZ  release the account.  Ms. Washington said she could not afford $100 as she had to

support her family and was not getting much SSI.

35.    On July 1, 2005, Ms. Washington's next monthly SSI payment was electronically deposited into her frozen account, thereby becoming unreachable.

36.    On July 5, 2005, Ms. Washington agreed to a "conditional release" whereby she would give GUTMAN & MINTZ  $200 in her North Fork Bank account in exchange for it lifting the restraint on her SSI.  Ms. Washington orally agreed to pay $60.00 a month as well.  Ms. Washington was still unaware that SSI was exempt from debt collection.

37.    On July 8, 2005, Ms. Washington signed a stipulation with defendant GUTMAN & MINTZ  in which she acknowledged the debt she owed to Dubor Associates and agreed to pay $60.00 a month thereafter.

38.    Unaware that the Social Security Act protected SSI from garnishment, Ms. Washington expected defendant GUTMAN & MINTZ  to deduct $60 directly from her SSI check each month.

39.    Ms. Washington was therefore surprised that her direct deposit SSI payments did not decrease by $60.00.  Having financial difficulty, she did not make any payments to defendant GUTMAN & MINTZ  despite the July 8, 2005 stipulation.

40.    In August 2006 and October 2006, Ms. Washington was hospitalized three times for transient ischemic attacks (also known as TIA's or mini-strokes) that made it difficult for her to talk and walk.

41.    On or about November 6, 2006, defendant GUTMAN & MINTZ  restrained Ms. Washington's bank account for a second time.  At that time, the account contained only $366.93 all of which was remnants of Ms. Washington's November 1, 2006 direct deposit SSI check of

$626.00.  By this time, child support payments had stopped.

42.  Upon information and belief, defendant GUTMAN & MINTZ was aware at the time that Ms. Washington's only income was exempt from debt collection.

43.  In November 2006, Ms. Washington again did not receive a 5222(e) notice from defendant GUTMAN & MINTZ or a copy of the restraining notice it served on North Fork Bank, as required by N.Y. CPLR § 5222(d).

44.  Ms. Washington learned of the November 2006 restraint when she called the bank trying to pay a Sprint telephone bill with her debit card.  Shortly thereafter she received a letter from North Fork Bank dated November 6, 2006 advising her that her account had been frozen and that North Fork was deducting $100 from her account as a legal processing fee.

45.  Sometime thereafter, a woman residing at the homeless shelter where Ms. Washington lived told Ms. Washington that SSI was exempt from debt collection and that Ms. Washington could get her SSI payments back.

46.  Sometime in the week proceeding November 29, 2006, Ms. Washington called defendant GUTMAN & MINTZ and advised them that she was on SSI and that her frozen bank account contained only SSI payments.  Upon information and belief, an employee of defendant GUTMAN & MINTZ said it did not matter since Ms. Washington had promised to pay $60.00 a month and had to fulfill her promise.

47.  Although Ms. Washington was quite weak from her recent hospitalization, she traveled with her daughter to the Brooklyn Civil Court on November 29, 2006 where she filed an order to show cause seeking to lift the restraint on her bank account containing SSI.

48.  In her order to show cause, Ms. Washington asked for a prompt hearing on the

matter because "I have no money to buy food."

49.   Adam Glaser, of Counsel to Defendant GUTMAN & MINTZ, filed an affirmation in opposition to Ms. Washington's order to show cause on December 5, 2006 stating in part that Ms. Washington had not established her account contained only SSI payments, and that the burden was upon her to establish this claim.

50.   On December 6, 2006, Ms. Washington appeared with her mother and daughter before New York City Civil Court Judge Kathy J. King. Ms. Washington brought an award letter from SSI and a bank statement from North Fork. Judge King lifted the restraint because the account contained only exempt SSI.

51.   Judge King also ordered that defendant GUTMAN & MINTZ stay "any further enforcement proceedings . . .based upon [Ms. Washington's] documentation and statement that her sole source of income and any monies in her bank account are social security income."

52.   Judge King also ordered North Fork Bank to reimburse Ms. Washington for the $100 legal processing fee. Despite receiving that order, North Fork ignored it and instead charged Ms. Washington an additional $10.00 for reactivating her debit/atm card.

53.   Despite the court order that gave notice that Ms. Washington's only income was SSI exempt from debt collection, defendant GUTMAN & MINTZ restrained Ms. Washington's account for a third time on or about May 4, 2007.

54.   At that time, the account contained only $215.10 in left over direct deposit SSI payments.

55.   Ms. Washington learned about this restraint when she called her bank to check on the balance.

56.   For a third time, Ms. Washington did not receive a 5222(e) notice from defendant GUTMAN & MINTZ or a copy of the restraining notice it served on North Fork Bank, as required by N.Y. CPLR § 5222(d).

57.   As a result of this third restraint, North Fork bank charged Ms. Washington $100.00 in a legal processing fee and another $30.00 for a bounced debit card purchase.

58.   On information and belief, defendant GUTMAN & MINTZ did not undertake any discovery or obtain any new information that suggested Ms. Washington was receiving non-exempt income in the months following the court's December 6, 2007 order.

59.   On or about May 8, 2007, Ms. Washington contacted South Brooklyn Legal Services seeking help.

60.   On Friday, May 11, 2007, the undersigned attorney faxed a letter with supporting bank records to Michelle Miller, and employee of defendant GUTMAN & MINTZ , asking the defendant to release the bank restraint because it contained only exempt SSI payments. That same day, the undersigned attorney left a message with Ms. Miller on her answering machine advising her the account was exempt and that documentation had been faxed.

61.   On Monday, May 14, 2007, the undersigned called Ms. Miller at defendant GUTMAN & MINTZ . Ms. Miller of GUTMAN & MINTZ asked the undersigned whether Ms. Washington wished to enter a monthly payment plan. The undersigned informed the defendant that Ms. Washington was on SSI and could not afford a monthly payment plan and that her only income was exempt from debt collection. The undersigned further informed Ms. Miller that the Civil Court judge had stayed further enforcement proceedings.

62.   Ms. Miller reviewed her computer records which noted the judge had order the

Page 10 of 14

restraint lifted in December 2006 but did not indicate enforcement had been stayed. Ms. Miller agreed to lift the restraint that day. The undersigned faxed a copy of the civil court judge's order to Ms. Miller on May 15, 2007.

63.    On May 28, 2007, the undersigned called Ms. Miller as the account remained restrained. Ms. Miller advised the undersigned that she had sent a full release to North Fork Bank not until May 24, 2007.

64.    On May 31, 2007, the account was released and Ms. Washington regained access to her account. The balance in the account was $85.10, $130 less than at the time it was restrained due to North Fork's fees.

65.    Not having access to her SSI payments in her bank account for 27 days caused considerable hardship for Ms. Washington. She fretted over whether she would get her account unfrozen. She needed to have a bank account to find an apartment (she needed and continues to need to find an apartment lest she and her children be transferred into a less desirable shelter.) She worried that there was no way to stop future restraints, that even a Civil Court judge could not protect her, and that she would never get out of the shelter. Ms. Washington needed her SSI money to buy food for herself and her children, for car-fare to look at potential apartments, and to pay a phone bill. Although embarrassed, Ms. Washington nevertheless had to borrow about $400 from her 65 years old mother whose only income is Social Security and a pension.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

66.    Plaintiff repeats and re-alleges and incorporates by reference preceding paragraphs

1 - 65.

67.    15 U.S.C. § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

68.    15 U.S.C. § 1692d provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

69.    Defendant violated §§ 1692d and 1692f when it restrained plaintiff's bank account in May 2007 with the knowledge that the Ms. Washington's only income was exempt from debt collection.

70.    As a direct and proximate result of Defendant's violation, Plaintiff has sustained actual damages in an amount to be proved at trial.

## SECOND CLAIM  CLAIM FOR RELIEF

71.    Plaintiff repeats and re-alleges and incorporates by reference preceding paragraphs 1 - 65.

72.    15 U.S.C. § 1692e(10) prohibits a debt collector from using any "false, deceptive, or misleading . . . means in connection with the collection of any debt."

73.    NY CPLR 5222(d) requires the attorney for a judgment creditor to serve upon the judgment debtor within four days of service of a restraining notice a 5222(e) notice which advises the judgment debtor that SSI and other moneys are exempt from debt collection and the procedures for claiming the exemption.

74.    By failing to provide plaintiff in June 2005 and November 2006 with a 5222(e) notice, Defendant violated §§ 1692e(10) and 1692f.

75.     As a direct and proximate result of Defendant's violation, Plaintiff has sustained actual damages in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF

76.     Plaintiff repeats and re-alleges and incorporates by reference preceding paragraphs 1 - 65.

77.     As enumerated above in paragraphs 66 - 75, Defendant violated § 349 of the New York General Business Law by using deceptive acts and practices in the conduct of their business.

78.     As a result of these violations of § 349 of the General Business Law, Plaintiff is entitled to an injunction barring Defendant from engaging in the deceptive acts and practices, and to recover for her actual damages and costs.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court:

1.     Assume jurisdiction of this action;

2.     Declare that defendant GUTMAN & MINTZ 's actions violate 15 U.S.C. §§ 1692d, 1692e, and 1692f and New York General Business Law § 349.

3.     Enjoin Defendant from committing similar violations in the future;

5.     Award actual damages to the Plaintiff;

6.     Award statutory damages to the Plaintiff;.

7.     Award costs to the Plaintiff; and,

6.  Award such other and further relief that seems just and proper.


Dated: October 1, 2007


_____
JOHN C. GRAY, ESQ. (9872 JG)
SOUTH BROOKLYN LEGAL SERVICES
Johnson M. Tyler (5429 JT)
Edward Josephson (7815 EJJ)
Attorneys for Plaintiffs
105 Court Street
Brooklyn, N.Y.  11201
(718) 237-5500